Steven R. Weinmann (SBN 190956)
Steven.Weinmann@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
Trisha.Monesi@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:   (310) 556-4811
Facsimile:    (310) 943-0396

Attorneys for Plaintiff

[*Additional Counsel on Signature Page*]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZIAD EL-RIFAI individually, and on behalf of a class of similarly situated individual, <br><br> Plaintiff, <br><br> v. <br><br> FORD MOTOR COMPANY, a Delaware corporation, <br><br> Defendant. | Case No.: _____ <br><br> **CLASS ACTION COMPLAINT** <br><br> (1) Violation of California Consumer Legal Remedies Act <br> (2) Violation of Unfair Competition Law <br> (3) Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act <br> (4) Breach of Express Warranty under Cal. Com. Code § 2313 <br> (5) Breach of Warranty under the Magnuson-Moss Warranty Act <br> (6) Unjust Enrichment <br><br> **DEMAND FOR JURY TRIAL** |

1

**INTRODUCTION**

2     1.     Plaintiff Ziad El-Rifai ("Plaintiff") brings this action for himself and

3     on behalf of all persons in the State of California and the United States who

4     purchased or leased any 2011-2019 model year Ford Mustang vehicle designed,

5     manufactured, marketed, distributed, sold, warranted and serviced by Ford Motor

6     Company ("Ford" or "Defendant") and equipped with an MT82 Manual

7     Transmission ("Transmission") (collectively, "Class Vehicles").  These Class

8     Vehicles were delivered to consumers by Ford with inherent defects in design,

9     manufacturing process and/or materials.

10     2.     Plaintiffs are informed and believe, and based thereon, allege that

11     the MT82 Transmission is defective. These transmissions have a common defect.

12     The defect, which was latent, but existed at the time that the Class Vehicles left

13     Ford's possession and control, manifests itself over time. The Transmission is

14     defective in its design, manufacturing, and or materials in that, among other

15     problems, the transmission slips, jerks, clashes gears, and harshly engages; has

16     premature internal wear, increased shift efforts, inability to drive, and eventually

17     suffers a catastrophic failure (the "Transmission Defect").

18     3.     The Transmission Defect does not merely result in an uncomfortable

19     driving condition. The slips, jerks, gear clashes, harsh, difficult and inability to

20     shift are related to internal issues within the transmission and clutch components

21     causing hydraulic systems and gears not to function properly, resulting in

22     decomposition/failure of parts throughout the transmission. This damage to the

23     transmission imposes escalating repairs on consumers, including having to

24     replace the defective transmission with a new transmission. Based on Ford's

25     inability to resolve the Defect, it appears all consumers will need replacement of

26     transmission components including the shift forks, shift shaft, synchronizers,

27     clutch assembly, or even the entire transmission.

28     4.     As detailed below, due to the Transmission Defect, the Class

Vehicles are prone to and exhibit premature transmission failures at rates and in a manner that do not conform to industry standards. The Transmission Defect substantially decreases the value of the Class Vehicles, forcing owners/lessees of the vehicles to potentially spend significant money—or to hope that Ford will cover the cost—to have the transmission repaired or replaced. Even then, repairing or replacing the defective parts does not resolve the Transmission Defect, because the customer is left with inherently defective parts or receives another defective part in its place. For the same reason, repairing the Class Vehicles does not cure the Transmission Defect, but merely leaves the vehicles with the same defective parts that permanently decrease the Vehicle's value. Based on Ford's inability to resolve the Defect so far, it appears that all consumers will need replacement of transmission components including, but not limited to the shift forks, clutch, synchronizer parts, or the entire transmission. As such, the Transmission Defect endangers the drivers and passengers of the vehicles. It creates uncertainty for the drivers of the Class Vehicles, who cannot rely on their vehicles to operate consistently, reliably, or safely. Ford's deliberate non-disclosure of these defects artificially inflated the purchase and lease price for these vehicles. Had Ford disclosed the Transmission Defect, Plaintiff and the Class members would not have purchased their vehicles or would have paid less for them.

5.      As described more fully below, Ford has been aware of the Transmission Defect since the introduction of the transmission. Ford repeatedly failed to disclose and actively concealed the Defect from Class members and the public and continues to market the Class Vehicles without disclosing the Transmission Defect. Since 2011, Ford has issued a total of seven (7) Special Service Messages ("SSM") and Technical Service Bulletins (TSB), relating to the shifting issues and other inherent transmission defects. A TSB is an alert to dealerships, informing them of a potential problem in a Ford product and

1  advising them how to address the problem when customers complain to Ford

2  dealerships. The TSBs related to the Transmission Defect have advised

3  dealerships to, among other things:

4  a. Drain and Refill the Transmission;

5  b. Remove the transmission from the vehicle, disassemble;

6  c. Replace 3rd/4th shift fork, the countershaft 3rd gear, and the 3rd/4th

7  gear synchronizer hub and sleeve;

8  d. Replace the gearshift lever;

9  e. Inspect and Replace the clutch pedal position (CCP) switch and

10  bracket.

11  f. Remove the shift rail detents;

12  g. Replace the 1st/2nd shift for, the main shaft 2nd gear, the 1st/2nd

13  gear synchronizer hub and sleeve; and

14  h. Reassemble the transmission.

15  Nevertheless, Ford has never notified consumers of the Transmission Defect, as

16  TSBs and SSMs are not provided to owners as a matter of course.

17  6.     Ford has exclusive knowledge of, and has been in exclusive

18  possession of, information pertaining to the Transmission Defect, which was

19  material to Plaintiffs and Class members, who could not reasonably know of the

20  Defect. Ford has not disclosed the Transmission Defect to purchasers or lessees

21  like Plaintiffs at the point of purchase or through advertisements. Such

22  disclosures would have influenced purchase decisions and purchase price. Under

23  all circumstances, Ford had a duty to disclose the latent Transmission Defect at

24  the point of sale of the Class Vehicles. Instead, Ford failed and refused—and

25  continues to refuse—to provide a meaningful remedy to those who have suffered

26  economic harm as a result of the Transmission Defect.

27  7.     Despite Ford's awareness and knowledge of the Transmission

28  Defect, at Ford's direction, its employees and agents often continue to deny that

the defect even exists and have developed standard answers to dispel expected complaints made by Plaintiffs and Class members. Specifically, on information and belief, when customers complain to Ford about the Transmission Defect, customers are told that Transmission Defect is caused by wear and tear, user error, or aggressive driving.

8.    The Ford MT82 and MT82-D4 Transmission Defect is a latent defect that presents a safety risk to riders, causes damage to components over time, and makes vehicles equipped with the defective transmission dangerous and uncomfortable to ride. It makes the Class Vehicles unfit for their ordinary use of providing safe and reliable transportation. As such, the Transmission Defect presents a breach of the implied warranty of merchantability.

9.    Additionally, because Ford concealed and failed to disclose the Transmission Defect, owners have suffered and continue to suffer substantial damages and should be entitled to the benefits of all tolling and estoppel doctrines.

10.    As a direct and proximate result of Ford's concealment of, and failure to disclose, the Transmission Defect, Plaintiffs and Class members: (1) overpaid for the Class Vehicles because the Defect significantly diminishes the value of the Vehicles; (2) have Vehicles that suffer premature transmission failures; and (3) have and/or must expend significant money to have their Vehicles (inadequately) repaired.

11.    Ford's decision to sell the Class Vehicles without disclosing its specialized knowledge of the Transmission Defect violates state consumer protection laws.

12.    Plaintiffs and Class members have purchased and leased Class Vehicles that they would not otherwise have purchased or leased, or would have paid less for, had they known of the Transmission Defect and the point of sale. Plaintiff and Class members have consequently suffered ascertainable losses and

actual damages. Moreover, Plaintiffs seek equitable remedies, including *inter alia*, an order that the Class Vehicles are defective and injunctive relief preventing Ford from continuing its wrongful conduct as alleged herein.

## PARTIES

### Plaintiff Ziad El-Rifai

13.    Plaintiff Ziad El-Rifai is a California citizen who resides in Glendale, California.

14.    On or about July 18, 2018, Plaintiff purchased a new 2018 Ford Mustang GT from AutoNation Ford Valencia, an authorized Ford dealer in Valencia, California. His vehicle had a total sales price of $65,272.36.

15.    Plaintiff purchased his vehicle primarily for personal, family, or household use. Ford manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

16.    Passenger safety, vehicle performance, and reliability were all factors in Plaintiff's decision to purchase his vehicle. Prior to purchasing his Class Vehicle, Plaintiff researched the vehicle on Ford's official website, conducted online research via various auto publications (*i.e.*, Road and Track, Motor Trend, and Edmonds), visited dealership websites, and subsequently test drove the vehicle. In all, Plaintiff conducted approximately a year's worth of research prior to his purchase. Before purchase, Plaintiff discussed his vehicle with employees of the selling Ford dealership, including the salesperson that assisted him in his decision to purchase his vehicle.

17.    Plaintiff did not know and was never informed by Ford prior to purchasing his Class Vehicle that it had a defective Transmission.

18.    Had Ford disclosed its knowledge of the Transmission Defect and the fact that it posed a safety concern when Plaintiff purchased his 2018 Ford Mustang GT, Plaintiff would have seen such disclosures and been aware of them. Indeed, Ford's omissions were material to Plaintiff. Like all members of the

putative classes, Plaintiff would not have purchased his 2018 Ford Mustang GT or would not have paid the purchase price charged by Ford had he known that the Transmission suffered from the Transmission Defect.

19.    Within the first few months after purchase, Plaintiff's transmission was exhibiting the Transmission Defect.

20.    Specifically, on or around September 27, 2018, with approximately 2,555 miles on the odometer of his Ford Mustang, Mr. El-Rifai delivered his vehicle to AutoNation Ford Valencia complaining, as recorded on his repair order, of "[v]ibration in drive line, shifter binds, esp[ecially] when shifting above 2500 RPM." The Technician identified the cause as "ST001 Miscellaneous Manual Transmission and Clutch – Repair." However, the problem remained uncorrected and Mr. El-Rifai had to return for repairs.

21.    On August 5, 2019, with 13,329 miles on the odometer, Mr. El-Rifai, returned to AutoNation Ford due to continuing problems with the MT82 transmission in his 2018 Mustang. The repair order prepared by the Ford dealership during this visit confirms, "clutch grinding noise when shifting." The technician reported the following: "Test drive with customer to confirm noise. Can hear a noise when sifting into 2nd and 3rd gear.  Found no TSB, GSM, or SMM for concern.  Adjusted gear shifter and bleed clutch system." However, this procedure did not correct the problem.

22.    Thereafter, on August 27, 2019, with approximately 14,462 miles on the odometer, Mr. El-Rifai returned to AutoNation Ford Valencia complaining, as stated in the repair order, "Manual trans grinds when shifting, esp[ecially] at highre [sic]  RPMS per cust."  The technician test drove the vehicle and reported the following: "when going into 2nd gear and 3rd gear has a harsh feel engagement, excessive force needed to put into 2nd and 3rd gear." The technician found "metal debris" in the transmission fluid. The transmission was then mounted to a bench fixture for a tear down. The technician reported in the repair

order that he: "[f]ound synchronizer for 2nd and 3rd with uneven wear. Found wear to synchronizer sleeve to 1st/2nd and 3rd/4th sleeve. 2nd gear and 3th [sic] gear have wear. Found a lot of metal on magnet. All gear [sic] have metal imprinting of metal going through the transmission." In response, the technician replaced the transmission assembly, flywheel assembly, and related components. Mr. El-Rifai's vehicle was returned to him on September 19, 2019.

23.    Despite the transmission replacement, Plaintiff's vehicle continues to exhibit all of the problems he had previously complained about to authorized Ford dealer.

24.    At all times, Plaintiff has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

## **Defendant**

25.    Defendant Ford Motor Company is a corporation organized and in existence under the laws of the State of Delaware and registered with the California Department of Corporations to conduct business in California.  Ford Motor Company's Corporate Headquarters is located at 1 American Road, Dearborn, Michigan 48126.  Ford Motor Company designs and manufactures motor vehicles, parts, and other products for sale in the United States and throughout the world.  Ford Motor Company is the warrantor and distributor of the Class Vehicles in California and throughout the United States.

26.    At all relevant times, Defendant was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and/or selling automobiles and motor vehicle components in California and throughout the United States.

## **JURISDICTION AND VENUE**

27.    This class action is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) and based on 28 U.S.C. §§ 1441 and 1453.

28. Venue properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 84(a), 1391(a) and (c) and 1441(a). In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all of the claims are derived from a common nucleus of operative facts and are such that Plaintiff would ordinarily expect to try them in one judicial proceeding.

29. In addition, Plaintiff resides in the County of Los Angeles California, within the Central District of California, and the acts and omissions alleged herein took place in the County of Los Angeles, California. Plaintiff's Declaration, as required under Cal. Civ. Code section 1780(d), which reflects that a substantial part of property that is the subject of this action is situated in Los Angeles County, and that Defendant is doing business in Los An\geles County, California, is attached as Exhibit 1.

## FACTUAL ALLEGATIONS

30. Since 2011, Ford has designed, manufactured, distributed, sold, and leased the Class Vehicles. Ford has sold, directly or indirectly, through dealers and other retail outlets, tens of thousands of Class Vehicles equipped with the Transmission in California.

31. Plaintiffs are informed and believe, and based thereon, allege that the MT82 Transmission (including its MT82-D4 variant) is defective. These transmissions have a common defect. The defect, which was latent, but existed at the time that the Class Vehicles left Ford's possession and control, manifests itself over time. The Transmission is defective in its design, manufacturing, and or materials in that, among other problems, the transmission slips, jerks, clashes gears, and harshly engages; has premature internal wear, increased shift efforts, inability to drive, and eventually suffers a catastrophic failure.

32. The problem does not merely result in an uncomfortable driving condition, but instead constitutes a serious safety issue that requires repairs

and/or leads to failures. The slips, jerks, gear clashes, harsh, difficult and inability to shift are related to internal issues within the transmission and clutch components causing hydraulic systems and gears not to function properly, resulting in decomposition/failure of parts throughout the transmission. This damage to the transmission imposes escalating repairs on consumers, including having to replace the defective transmission with a new transmission. Based on Ford's inability to resolve the Defect, it appears all consumers will need replacement of transmission components, including the shift forks, shift shaft, synchronizers, clutch assembly, or even the entire transmission.

33.    Due to the Transmission Defect, the Class Vehicles are prone to and exhibit premature transmission failures at rates and in a manner that do not conform to industry standards. The Transmission Defect substantially decreases the value of the Class Vehicles, forcing owners/lessees of the vehicles to potentially spend significant money—or to hope that Ford will cover the cost— to have the transmission repaired or replaced. Even then, repairing or replacing the defective parts does not resolve the Transmission Defect, because the customer is left with inherently defective parts or simply receives another defective part in its place. For the same reason, repairing the Class Vehicles does not cure the Transmission Defect, but merely leaves the vehicle with the same defective parts that permanently decreases the Vehicle's value. Based on Ford's inability to resolve the Defect so far, it appears that all consumers will need replacement of transmission components such as the shift forks, clutch, synchronizer parts or the entire transmission. As such, the Transmission Defect endangers the drivers and passengers of the vehicles. It creates uncertainty for the drivers of the Class Vehicles, who cannot rely on their vehicles to operate consistently, reliably, or safely. Ford's deliberate non-disclosure of these defects artificially inflated the purchase and lease price for these vehicles.

34.    The Ford MT82 and MT82-D4 Transmission Defect is a latent

1  defect that presents a safety risk to riders, causes damage to components

2  overtime, and makes vehicles equipped with the defective transmission

3  dangerous and uncomfortable to ride. It makes the Class Vehicles unfit for their

4  ordinary use of providing safe and reliable transportation. As such, the

5  Transmission Defect presents a breach of the implied warranty of

6  merchantability.

7      35.    The Transmission Defect in the Class Vehicles is a problem

8  associated with the design, materials and/or manufacturing that was caused by a

9  confluence of business decisions and choices Ford knowingly made, and

10  continues to make, in designing and managing the production of the Class

11  Vehicles.

12      36.    Ultimately, Ford decided to replace the Tremec and Borg Warner

13  transmissions on its vehicles with the Chinese made Getrag transmissions in

14  order to reduce cost. It was Ford's incorporation of the Chinese made Getrag

15  MT82 and MT82-D4 transmissions into the Class Vehicles that caused

16  substantial transmission defects, and it was Ford's decision to continue using the

17  MT82 and MT82-D4 transmissions, with knowledge of the Defect that would

18  result.

19          **The Transmission Defect Poses an Unreasonable Safety Hazard**

20      37.    The Transmission Defect causes unsafe conditions in the Class

21  Vehicles, including but not limited to slips, jerks, gear clashes, harsh, difficult

22  and inability to shift. These conditions are caused by issues within the

23  transmission and clutch components that prevent proper hydraulic system and

24  gears function, which in turn results in decomposition and failure of parts

25  throughout the transmission. These conditions present a safety hazard because

26  they severely affect the driver's ability to control the vehicle's speed,

27  acceleration, and deceleration.

28          **Ford Has Exclusive Knowledge of the Transmission Defect**

CLASS ACTION COMPLAINT

38.    Ford had superior and exclusive knowledge of the Transmission
Defect and knew or should have known that the defect was not known or
reasonably discoverable by Plaintiff and Class Members before they purchased
or leased the Class Vehicles.

39.    Upon information and belief, Ford began using the Getrag MT82
transmission in the Ford Mustang in or around 2010.

40.    Plaintiff is informed and believes and based thereon alleges that
before Plaintiff purchased or leased his Class Vehicles, and since at least 2010,
Ford knew about the Transmission Defect through sources not available to
consumers, including: pre-release testing data; early consumer complaints about
the Transmission Defect to Defendant's dealers who are their agents for vehicle
repairs; warranty claim data related to the defect; aggregate data from Ford's
dealers; consumer complaints to the NHTSA and resulting notice from NHTSA;
dealership repair orders; testing conducted in response to owner or lessee
complaints; TSBs applicable to the Class Vehicles; and other internal sources of
aggregate information about the problem.

41.    Only Ford had access to its pre-release testing data, aggregate data
from Ford's dealers, testing conducted in response to owner or lessee complaints,
and other internal sources of aggregate information about the problem.  Ford did
not make this information available to customers, and customers had no way to
access it.

42.    Ford became further aware of the problems stemming from the
Transmission Defects soon after it began implementation of the Getrag MT82 in
the Class Vehicles.  On August 3, 2011, the National Highway Traffic Safety
Administration (hereinafter "NHTSA") initiated an investigation. The Office of
Defects Investigations ("ODI") found that there were, at the time, 364 unique
reports from owners, 307 of which were provided directly by Ford to ODI.

43.    The alleged Transmission Defect was inherent in each Class

CLASS ACTION COMPLAINT

Vehicles' Transmission and was present in each Class Vehicles' Transmission at the time of sale.

44.    The existence of the Transmission Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a vehicle that was equipped with a Transmission.  Had Plaintiff and other Class Members known that the Class Vehicles were equipped with defective transmissions, they would not have purchased or leased the Class Vehicles equipped with the Transmissions or would have paid less for them.

45.    Irrespective of all the aggregate information, both internal and external, that clearly provided Ford with knowledge that the Transmission is dangerously defective, Ford has never disclosed to owners or prospective purchasers that there is a safety defect in the Class Vehicles.  In fact, Ford intentionally and actively concealed the existence of a safety defect in the Class Vehicles.

46.    Reasonable consumers, like Plaintiff, reasonably expect that a vehicle's transmission is safe, will function in a manner that will not pose a safety hazard, and is free from defects.  Plaintiff and Class Members further reasonably expect that Ford will not sell or lease vehicles with known safety defects, such as the Transmission Defect, and will disclose any such defects to its consumers when it learns of them.  They did not expect Ford to fail to disclose the Transmission Defect to them and to continually deny the defect.

**NHTSA Complaints**

47.    Besides whatever internal testing Ford likely conducted, Ford must have learned of the Transmission Defect through customer complaints. These include an extensive list of complaints on the NHTSA website.

48.    NHTSA is a federal agency responsible for ensuring safe roadways

CLASS ACTION COMPLAINT

and enforcing federal motor vehicle safety standards.[1] Consumers may file vehicle safety-related complaints through the NHTSA website, where they are logged and published. They may be easily sorted by make, model, and year of vehicle.  Upon information and belief, Ford and/or Ford personnel would review NHTSA's website for complaints.

49.    Federal law requires automakers like Ford to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See TREAD Act,* Pub. L. No. 106-414, 114 Stat.1800 (2000).

50.    Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id.* Thus, Ford knew or should have known of the many complaints about the Transmission Defect Defect logged by NHTSA Office of Defect Investigation (ODI), and the content, consistency, and large number of those complaints alerted, or should have alerted, Ford to the Transmission Defect.

51.    A search for "2013 Ford Mustang" on the NHTSA website yields a large volume of complaints from consumers experiencing the transmission defect[2]. Below are but a few examples:

a. A consumer in Prattville, AL wrote on **January 7, 2013**:

---

[1] https://www.nhtsa.gov/about-nhtsa, last accessed April 29, 2019.

[2] https://www.nhtsa.gov/vehicle/2013/FORD/MUSTANG/2%252520DR/RWD, last accessed April 29, 2019.

CLASS ACTION COMPLAINT

OWNER OF A 2013 MUSTANG GT PREMIUM 5.0 WITH 6
SPEED TRANSMISSION. HAVE HAD PROBLEMS WITH
ROUGH SHIFTING SINCE SHORTLY AFTER BUYING. HAVE
TAKEN IT INTO MY LOCAL FORD DEALERSHIP 2 TIMES SO
FAR AND MADE MENTION OF MY PROBLEMS SEVERAL
OTHER TIMES. FORD HAS BEEN UNABLE TO CORRECT
THE ROUGH SHIFTING WITH BOTH TRIPS TO THE SERVICE
DEPARTMENT TELLING ME THAT THEY CAN NOT
DUPLICATE THE PROBLEM. THE ROUGH SHIFTING
OCCURS IN 1ST-2ND AND 3RD GEARS MOST OF THE TIME,
ESPECIALLY IN COLDER TEMPERATURES. SOMETIMES I
ALSO HAVE A HARD TIME DOWN-SHIFTING INTO LOWER
GEAR AND JUST HAVE TO WAIT UNTIL I REACH A
COMPLETE STOP BEFORE BEING ABLE TO DOWN-SHIFT.
CURRENTLY HAVE ABOUT 7200 MILES ON THE CAR AND
WOULD LOVE FOR THIS ROUGH SHIFTING TO BE
RESOLVED. THESE SAME ISSUES REMIND ME OF THE 2011
AND 2012 MUSTANG'S WITH MANUAL TRANSMISSION
THAT FORD RELEASED A FIX FOR THAT WOULD ACT THE
SAME WAY. *TR

b. A consumer wrote on **January 21, 2013:**

TL* THE CONTACT OWNS A 2013 FORD MUSTANG. WHILE
DRIVING APPROXIMATELY 60 MPH, THE VEHICLE FAILED
TO SHIFT INTO THIRD GEAR. THE VEHICLE WAS NOT
TAKEN TO THE DEALER FOR DIAGNOSTIC TESTING. THE
VEHICLE WAS NOT REPAIRED. THE APPROXIMATE
FAILURE MILEAGE WAS 300. ..UPDATED 03/18/13 *BF

THE CONSUMER STATED THE VEHICLE FAILED TO SHIFT
INTO 3RD  GEAR, WHICH HAD OCCURRED SEVERAL
TIMES. THE CONSUMER STATED THE VEHICLE DID NOT
SHIFT INTO SECOND GEAR ONCE. UPDATED 03/27/13

c. A consumer from Phoenix, AZ wrote on **March 6, 2013:**

WHEN SHIFTING FROM 2ND TO 3RD GEAR. THE VEHICLE
WOULD NOT SHIFT INTO 3RD WITH THE CLUTCH FULLY
DEPRESSED. THE VEHICLE WAS TAKEN TO THE DEALER
IMMEDIATELY. THE DEALER ACKNOWLEDGE THE ISSUE
BUT WAS UNABLE TO REPAIR THE ISSUE STATING THAT
THEY WERE TOLD FROM FORD MOTOR COMPANY THAT
IT WAS NORMAL OPERATION. *TR

CLASS ACTION COMPLAINT

d. A consumer wrote on **June 25, 2013:**

TL* THE CONTACT OWNS A 2013 FORD MUSTANG. THE CONTACT STATED THAT WHILE DRIVING 30 MPH, HE BEGAN TO SHIFT GEARS AND HEARD A GRINDING NOISE. THE VEHICLE WAS TAKEN TO THE DEALER FOR INSPECTION AND THEY STATED THAT THE TRANSMISSION NEEDED TO BE REBUILT. THE VEHICLE WAS REPAIRED BUT THE FAILURE RECURRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 222.

e. A consumer wrote on **December 10, 2013:**

12-9-13 TRANSMISSION ISSUE BROUGHT TO FORD DEALE

EMAIL TO FORD:

SUBJECT: REPAIR ORDER 43617

I WOULD APPRECIATE FORD TO HAVE A CONSIDERATION OF THE FOLLOWING:

1. I WOULD LIKE TO SEE A NEW TRANSMISSION PUT INTO THIS 2013 BOSS 302 LAGUNA SAGA WITH UNDER 6000 MILES.

2. RESURFACE FLY WHEEL.

3. REPLACING THE CLUTCH AND PRESSURE PLATE.

I PAID OVER $66,000K FOR THIS VEHICLE.

AND FOR FORD TO HAVE THE NERVE OF PLACING A MADE IN CHINA "GETRAG" MT-82 INTO AN AMERICAN MUSCLE CAR IS IN MY OPINION IS DESPICABLE. *TR

f. A consumer from Brooklyn Park, MN wrote on **June 10, 2015:**

CANNOT SHIFT FROM FORTH TO FIFTH IN MY CAR AND 2ND GEAR EXPERIENCES A LOCK OUT / MISSED SHIFT AND WILL NOT GO IN TO 2ND. BAD TRANSMISSION AND SYNCRO. PROBLEMS

g. A consumer from Phoenix, AZ wrote on **August 31, 2015:**

NOTICED I COULDN'T GET THE CAR (2013 BOSS 302 - BOUGHT NEW) TO SHIFT INTO 3RD GEAR AT HIGHER RPMS. (NOT ON THE TRACK, JUST ON THE FREEWAY). MENTIONED TO LOCAL DEALER AND IT WAS BRUSHED

CLASS ACTION COMPLAINT

OFF BECAUSE THE CAR WAS SO NEW. WELL, IT STILL
HAPPENS AND SEEMS TO BE WORSENING. ONLY 3RD
GEAR AND ONLY HIGHER RPMS. WHEN TRYING TO GET
INTO 3RD IT JUST GRINDS AND DOES'T LATCH.

h. A consumer from Phoenix, AZ wrote on **April 19, 2016:**

I WAS UNABLE TO SHIFT GEARS WHILE DRIVING AND
THE SERVICE DEPT ADVISED I HAD BAD SYNCHROS AND
WAS FIXED UNDER WARRANTY. FAST FORWARD A
COUPLE OF MONTHS AND HAD DIFFICULTY SWITCHING
GEARS FROM 1ST TO 2ND HAD REALLY BAD GRINDING
AND WOULD TAKE A COUPLE OF TIMES TO SHIFT. THEN,
WHEN STARTING MY CAR FROM MY HOUSE, I WAS
UNABLE TO GET THE GEAR INTO REVERSE WHILE THE
CAR WAS ON. IT JUST WOULDN'T GO IN TO GEAR... NOT
ANY GEAR IN FACT. I HAD TO TURN THE CAR OFF AND
PUT IT INTO REVERSE AND THEN TURN THE CAR ON.
WHILE THE CLUTCH WAS FULLY PRESSED DOWN THE
CAR STARTED MOVING BACKWARDS WHEN I REMOVED
MY FOOT FROM THE BREAK. (THE CAR WAS LEVEL AND
THAT NEVER HAPPENS). THEN AFTER BACKING UP I
COULDN'T GET IT OUT OF REVERSE. I HAD TO TURN THE
CAR OFF AND PUT IT IN 1ST AND THEN START THE CAR.
THE SAME THING - IT MOVED WITH THE CLUTCH IN AND
COULDN'T GET IT OUT OF GEAR. I HAD THE CAR TOWED
TO THE DEALER'S SERVICE DEPARTMENT. AFTER THE
TOW, FOR WHATEVER REASON, THEY WERE ABLE TO
DRIVE THE CAR WITHOUT ISSUE. I'M NOT USED TO
DRIVING A CAR WITH SUCH TRANSMISSION PROBLEMS
THAT CAN'T BE DIAGNOSED.

52.    A search for "2014 Ford Mustang" on the NHTSA website yields a
number of complaints from consumers experiencing the transmission defect[3]. For
instance:

a. A consumer in Noblesville, IN wrote on **February 19, 2015:**

I AM HAVING PROBLEMS WITH THE TRANSMISSION
SHIFTING FROM 1-2-3 WHEN COLD. THE TRANSMISSION

---

[3]https://www.nhtsa.gov/vehicle/2014/FORD/MUSTANG/2%252520DR/R
WD, last accessed April 30, 2019

DOES NOT WANT TO GO INTO 1ST OR 2ND WITHOUT GRINDING AND WILL GRIND AN POP OUT OF 3RD WHEN TRYING TO SHIFT INTO IT SOMETIMES. I HAVE BEEN TO THE FORD DEALER AND WAS TOLD THAT FORD KNOWS ABOUT THE GRINDING ISSUE IN THE MUSTANG BUT WILL DO NOTHING TO FIX IT. I WAS TOLD BY THE FORD SERVICE ADVISOR THAT FORD WAS DOING A FLUID CHANGE TO A HEAVIER TRANS FLUID AND NOW THEY HAVE STOPPED. NOW I AM LEFT WITH A BRAND NEW MUSTANG THAT GRINDS THE GEARS EVERY DAY. *TR

b. A consumer in Port Charlotte, FL wrote on **April 21, 2015:**

I JUST GOT THIS CAR USED TOOK IT IN FOR A NOISE IN THE TRANSMISSION IN 5TH GEAR KNOWING IT IS UNDER WARRANTY THE FORD DEALER STARTED THE WORK ON THE CAR THREE DAYS LATER I WAS TOLD THAT IT WAS ABUSED AND NOT UNDER WARRANTY I WAS TOLD THAT THE OLD OWNER CHANGED THE CLUTCH THAT CAUSED THE DAMAGE I FIND THAT HARD TO BELIEVE THIS CAR IS NOT MODIFIED IN ANY WAS SO WHY THE CLUTCH AND I HAVE READ ALL OF THE 5TH GEAR PROBLEMS LIKE MINE. THEY HAVE TOLD ME THE REPAIR IS 3400. TO FIX AND IF THEY PUT IT BACK TOGETHER IT WILL BE 500 OR 600 I DIDN'T GIVE THEM WRITHEN OR WARBLE [sic] PERMISSION TO DO THIS SO I DON'T KNOW HOW I WILL HANDLE IT. THIS IS A ON GOING PROBLEM WITH THIS TRANSMISSION I'M TRYING TO WORK IT OUT WITH THE DEALER BUT I DON'T KNOW HOW IT WILL GO. THANK YOU TIM

53.    A search for "2015 Ford Mustang" on the NHTSA website yields a number of complaints from consumers experiencing the transmission defect[4]. For instance:

a. A consumer in Manor, TX wrote on **October 18, 2018:**

PREMATURE INTERMEDIATE SHAFT FAILURE. RESULTED IN TRANSMISSION FAILURE. VEHICLE ONLY OPERATES IN

---

[4] https://www.nhtsa.gov/vehicle/2015/FORD/MUSTANG/2%252520DR/RWD#complaints, last accessed April 29, 2019.

CLASS ACTION COMPLAINT

1, 2, 3 AND REVERSE. VEHICLE IN MOTION.

b. A consumer in Fair Lawn, NJ wrote on **August 21, 2018:**

I HAVE A 2015 MUSTANG GT PREMIUM WITH A STANDARD TRANSMISSION AND WHEN EVER I'M AT A STOP AND PRESS ON CLUTCH TO PUT INTO 1ST. GEAR THERE IS A THUD SOUND LIKE THE CLUTCH ISN'T HOLDING. AND GOING INTO 2ND. GEAR THERE'S A GRINDING FEELING LIKE SYNCHROS ARE BROKEN.

c. A consumer in Cakera, AL wrote on **September 27, 2015:**

LOUD THUD WHEN SHIFTING, GRINDING DURING SHIFTING OF ALL   GEARS, INTERMITTENT HIGH RPM LOCKOUT. FORD CLAIMS ITS "NORMAL"

d. A consumer in Orlando, FL wrote on **August 4, 2015:**

I AM ALSO EXPERIENCING THE THUD ISSUE IN MY 2015 FORD MUSTANG GT CAR. IT'S REALLY NOTICEABLE WHEN I SHIFT FROM AND TO 1, 2, 3, 4 AND IT'S QUIETER BUT STILL THERE SHIFTING 5 AND 6. NOISE IS VERY ANNOYING, BUT MY CONCERN IS WILL I HAVE ISSUES WITH MY DRIVE TRAIN, CLUTCH OR ANY THING ELSE IN THE FUTURE.

e. A consumer in Jonesboro, GA wrote on **December 29, 2014:** HTTP://WWW.MUSTANG6G.COM/FORUMS/SHOWTHREAD.PHP?T=14267

VEHICLE EXHIBITED THE SOUND SHOWN IN THE VIDEO. IT TOOK AN INDEPENDENT SHOP TO DIAGNOSE AND FIND THE PROBLEM TO BE SHOWN IN THE TRANSMISSION BELLHOUSING OF THE MT82. DEALER FINALLY HEARD THE ISSUE AND SERVICE MANAGER ACKNOWLEDGED IT SOUNDED FROM THE TRANS, BUT NOW DEALER IS SAYING THE PROBLEM ISN'T OCCURRING. THEY HAVE FAILED TO FOLLOW MY INSTRUCTIONS ON REPRODUCING THE ISSUE. THIS COULD CAUSE A SEVERE TRANSMISSION FAILURE AND LOSS OF CONTROL BUT NO ATTEMPTS TO REMOVE THE TRANS TO INSPECT HAS BEEN DONE. *TR

54.    A search for "2016 Ford Mustang" on the NHTSA website yields a

CLASS ACTION COMPLAINT

number of complaints from consumers experiencing the transmission defect[5]. For instance:

a. A consumer from Tolleson, AZ wrote on **May 24, 2016:**

6 SPEED MANUAL TRANSMISSION; CLUNKS, GRINDS AND DIFFICULT TO ENGAGE IN 1ST-4TH GEARS, HAPPENS UNDER ALL DRIVING CONDITIONS. MANUFACTURER REFUSES TO ADDRESS UNDERLYING CAUSE.

b. A consumer from Gilbert, AZ wrote on **August 7, 2017:**

SINCE I HAVE PURCHASED THE CAR WITH 300 MILES I HAD TO TAKE THE VEHICLE IN BECAUSE THE TRANSMISSION WAS AT TIMES, HARD TO SHIFT, WOULD GRIND A GEAR. LOCKED ME OUT OF A GEAR, AND IN GENERAL CAN SHAKE AND PRODUCE LOUD THUMPING NOISES WHEN ENGAGING GEARS WHILE SITTING AT A STANDSTILL OR EVEN WHILE DRIVING DOWN THE ROAD. I WAS TOLD AT THE TIME THAT THIS WAS NORMAL BEHAVIOR. I HAD TEST DROVE MORE THAN ONE CAR BEFORE PURCHASING THIS ONE. NONE OF THE OTHERS BEHAVED THIS WAY. I HAVE DONE MORE RESEARCH AND DISCOVERED THAT THIS IS A VERY INTERMITTENT ISSUE BETWEEN BUILDS OF THE TRANSMISSION. I TOOK IT IN AGAIN FOR SERVICE. THEY HAD REMOVED THE TRANSMISSION AND SERVICED SOME PARTS. UPON GETTING THE CAR BACK IT ALMOST IMMEDIATELY WENT BACK TO DOING THE SAME THING. THIS IS NOT A BIG SAFETY CONCERN, BUT COULD CAUSE BIGGER AND MORE EXPENSIVE ISSUES DOWN THE ROAD DEPENDING ON WHAT IS HAPPENING TO THE TRANSMISSION. THIS IS ONE OF FOUR COMPLAINTS I HAVE WITH THIS PARTICULAR VEHICLE THAT HAVE NOT BEEN RESOLVED.

c. A consumer from Morristown, TN wrote on **March 19, 2018:**

2016 FORD MUSTANG GT 6 SPEED MANUAL. SHIFTING GEARS CLUTCH ALL THE WAY IN IT HAS A HARSH FEELING NOTCHY GOING INTO 1ST 2ND 3RD GEARS THE

---

[5] https://www.nhtsa.gov/vehicle/2013/FORD/MUSTANG/2%252520DR/RWD, last accessed April 29, 2019.

CLASS ACTION COMPLAINT

OTHER GEARS FEEL SMOOTH. I HAVE TALKED TO ANOTHER GUY AND HIS ONLY HAS 2K MILES AND HE HAS THE SAME PROBLEM. I LOVE THIS MUSTANG BUT THAT JUST MAKE IT NOT FUN TO DRIVE ANYMORE. FORD NEEDS TO RECALL THIS PROBLEM ASAP.

55.    A search for "2017 Ford Mustang" on the NHTSA website yields a number of complaints from consumers experiencing the transmission defect[6]. For instance:

a. A consumer from Manning, SC wrote on **November 30, 2018:**

CAR MAKES A CLUNCK WHEN SHIFTING GEARS. SO BAD YOU CAN FEEL IT THOUGH THE SEAT. LOOKS LIKE MANY OTHER PEOPLE ARE HAVING SIMILAR ISSUES. IT DOES IT SITTING STILL AND MOVING.

b. A consumer from Lindsay, CA wrote on **October 14, 2018:**

WHENEVER I TAKE OFF AND WHILE I'M DRIVING SHIFTING GEARS THE CAR MAKES A THUD OR THUMP SOUND. WHEN I FIRST PUT IT INTO GEAR IT MAKES THE THUD SOUND AND IT CONTINUES THROUGHOUT SECOND AND THIRD EVEN FOURTH GEAR. IT'S ODD BECAUSE NO OTHER CAR THAT I'VE OWNED HAS DONE THIS AND I DO NOT THINK IT'S NORMAL.

c. A consumer from Elkhart, IN wrote on **March 28, 2018:**

CAR HAS AUDIBLE CLUNKING NOISE WHEN SHIFTING FROM GEAR TO GEAR. MANUAL TRANSMISSION.

d. A consumer wrote on **November 4, 2017:**

THE VEHICLE HAS BEEN BALANCE THE WHEELS AT LEAST 4 TIMES IN THE LAST 2 MONTHS ALSO REPLACED BOTH FRONT ROTORS THE VEHICLE HAVE A VIBRATION ON THE STEERING WHEEL AROUND 50 TO 60 MILES AN HOUR ALSO HAVE A PINGING METAL SOUND WHEN YOU SHIFT ..ALSO A WOBBLE IN BETWEEN 5 TO 10 MILES AN HOUR A RIGHT REAR TIRE WAS REPLACED NO CHANGE

---

[6] https://www.nhtsa.gov/vehicle/2013/FORD/MUSTANG/2%252520DR/RWD, last accessed April 29, 2019.

CLASS ACTION COMPLAINT

000004/01217523_1

THE VEHICLE HAVE ONLY 2200 MILES ONE FORD
MECHANIC FEELS AFTER CONFIRM MY CONCERNS THAT
COULD BE DRIVE LINE RELATED . DESPITE MY
CONCERNS FORD IS CONTACTING AN ENGINEER TO
LOOK AT THE CAR DONT KNOW WHEN EVEN AFTER A
MECHANIC FOUND THIS .WHAT TO ME COULD BECOME A
SAFETY ISSUE .CONTACTED FORD CORP STILL WAITING
WHEN ANYONE WILL FIX MY CAR .I AM ANGRY OF THE
LACK OF CARING FROM FORD DEALERS .THERE MANY
FORD MUSTANG OWNERS WITH THIS PROBLEM .

56.     A search for "2018 Ford Mustang" on the NHTSA website yields a
number of complaints from consumers experiencing the transmission defect[7]. For
instance:

a. A consumer in Tuttle, OK wrote on **March 10, 2019:**

WHEN GETTING UP TO SPEED ON AN ON RAMP OR
PASSING ON A TWO LA E ROAD, WHEN SHIFTING INTO
THIRD GEAR, THE TRANSMISSION WILL NOT GO INTO
GEAR. I'VE HAD THIS HAPPEN TWICE, ONCE MY
DAUGHTER WAS WITH ME ON A TWO LANE ROAD, GOING
FROM SECOND TO THIRD WHILE PASSING, THE CAR WILL
NOT ALLOW IT. PEOPLE HAVE NOTED THIS MANY
PLACES WHILE RUNNING OUT SECOND GEAR AND
SHIFTING INTO THIRD IN MULTI SITUATIONS. THIS IS A
HAZARD AND IT IS KNOWN DUE TO THE SHIFTER NOT
BEING DIRECT AND USING A REMOTE LINKAGE. AN
AFTERMARKET BRACKET AND SHIFTER WILL FIX THIS
ISSUE, HOWEVER THIS VEHICLE SHOULD OPERATE
SAFELY WITHOUT PURCHASING AFTERMARKET
EQUIPMENT. SIMPLE LOOK UP MISSED SHIFTS WITH MT-
82 MUSTANG TRANSMISSION. YOU WILL SEE MANY WITH
THE SAME ISSUE AND AFTERMARKET PARTS TO FIX THIS
SAFETY HAZARD.

**Ford-Related Websites and Online Discussion Boards**

---

[7] https://www.nhtsa.gov/vehicle/2013/FORD/MUSTANG/2%252520DR/RWD, last accessed April 29, 2019.

57.     Consumers have posted extensively on websites dedicated to discussions of Ford vehicles regarding the transmission defect in vehicles equipped with the MT82 transmissions. Upon information and belief, Ford employees have seen these complaints. For example, consumer **"fdesalvo"** posted on mustangsource.com[8] **February 26, 2013:**

a. Thoughts on the 2014 MT82

I've managed to rack up 300 miles on the new GT and I'm still learning the nuances of this machine. Bear in mind this thing probably isn't even near broken in yet, so take this with a grain of salt.

The transmission requires a huge amount of finesse to manage mid - high RPM shifting. It feels as though the shift gate is moving about and I have to chase it around a bit.

Also, 80% of the time there's a clunk near the engine bay when shifting from 1st - 2nd. When I press the clutch shifting from 1st, I hear 3 metallic taps; it sounds like the pressure plate is bouncing against the flywheel.

I'm not going to make a service issue of any of this unless it persists beyond the first oil change. I'm going to assume that the shifting issue is due to the infamous shift bracket/bushing, so I ordered the Steeda replacement and hope to have that installed over the next 2 weeks.

These two issues have takes some of the enjoyment away from my experience, but the rest of the car has been great. Still, the enjoyment of rowing through the gears and that level of connectivity with the motor and transmission is the reason why I went manual. I really hope these two issues resolve themselves soon.

b. Consumer "2012GT" responded on **Febuary 27, 2013:**

Why did Ford keep this transmission?! It's been a nuisance for 3 years now. How many MT82 threads does it take Ford? You messed up; own up to it and put a quality manual in these cars. Quit duct taping an inherently flawed product!

Good luck with your MT82 dilemma man. You're in the company of

---

[8] https://themustangsource.com/forums/f726/thoughts-2014-mt82-519101/, last accessed April 30, 2019.

CLASS ACTION COMPLAINT

000004/01217523_1

1   many

2

3   58.     In a thread dedicated to the 2013 Ford Mustang[9], consumers posted

4   complaints including:

5       a. Mustang GT Premium 5.0L, Manual transmission 4,300 miles

6
        OWNER OF A 2013 MUSTANG GT PREMIUM 5.0 WITH 6
7       SPEED       TRANSMISSION. HAVE HAD PROBLEMS WITH
        ROUGH SHIFTING SINCE SHORTLY AFTER BUYING. HAVE
8       TAKEN IT INTO MY LOCAL FORD DEALERSHIP 2 TIMES SO
        FAR AND MADE MENTION OF MY PROBLEMS SEVERAL
9       OTHER TIMES. FORD HAS BEEN UNABLE TO CORRECT
10      THE ROUGH SHIFTING WITH BOTH TRIPS TO THE SERVICE
        DEPARTMENT TELLING ME THAT THEY CAN NOT
11      DUPLICATE THE PROBLEM. THE ROUGH SHIFTING
        OCCURS IN 1ST-2ND AND 3RD GEARS MOST OF THE TIME,
12      ESPECIALLY IN COLDER TEMPERATURES. SOMETIMES I
13      ALSO HAVE A HARD TIME DOWN-SHIFTING INTO LOWER
        GEAR AND JUST HAVE TO WAIT UNTIL I REACH A
14      COMPLETE STOP BEFORE BEING ABLE TO DOWN-SHIFT.
15      CURRENTLY HAVE ABOUT 7200 MILES ON THE CAR AND
        WOULD LOVE FOR THIS ROUGH SHIFTING TO BE
16      RESOLVED. THESE SAME ISSUES REMIND ME OF THE 2011
17      AND 2012 MUSTANG'S WITH MANUAL TRANSMISSION
        THAT FORD RELEASED A FIX FOR THAT WOULD ACT THE
18      SAME WAY
19
20      - jjitpro, Prattville, AL, US

21      b. Mustang GT500 5.8L V8, Manual transmission, 20,200 miles

22      I started hearing a clunking sound when shifting the manual
        transmission. I took the car to the deal and Ford had them replace
23      the slave cylinder and hydraulic clutch. I still hear the clunking
24      sound coming from the transmission. I will be taking the car back to
        see if they can fix the issue.
25
26      - Scott B., Albuquerque, NM, US

27
        _____
28      [9] https://www.carcomplaints.com/Ford/Mustang/2013/transmission/, last
        accessed April 30, 2019

**Trade Publications**

59.    Trade publications also described the transmission defect in vehicles equipped with the MT82 6-speed transmissions in articles posted online.

a. For example, an article on autoevolution.com reported:

The fifth-generation Mustang received a well-deserved update for the 2011 model year. But replacing the 5-speed Tremec TR-3650 proved to be troublesome for both Ford and Mustang enthusiasts, chiefly because the Getrag MT82 had a few faults. Arguably the most talked-about problem is the second into third gear high-rpm lockout. Then there's the hard shifting and weird feel of the clutch, the screws backing out, and the list of common problems goes on and on.

MT82 woes garnered so much attention at some point that the National Highway Traffic Safety Administration opened an investigation into the matter. But fortunately, Ford made small upgrades to the six-speed manual with the passing of time. From clutch springs to oil viscosity, bolt types to gear finishes, most defects have been addressed. Not all of them, though.

The sixth-generation Mustang still features a bit of notchiness on cold mornings until the oil warms up. Switching to a performance-oriented shifter or support bracket eliminates this hindrance, and the Ford Motor Company took notice of it. So for 2018, the Mustang GT ushers in an important update.

Referred to as MT82-D4, the latest incarnation of the six-speed manual developed from the Tremec TR-6060 promises to perform much better than its predecessor. The Getrag-supplied transmission is exclusive to the Coyote V8-powered Mustang GT and brings together a dual mass flywheel, twin disc clutch and revised gearing. The biggest difference compared to the gearbox equipping the 2015-2017 Mustang GT is the direct-drive fourth gear.

With fifth and sixth relegated to overdrive gears, the 2018 Mustang GT keeps the engine speed lower during highway cruising. But oddly enough, the additional overdrive gear doesn't improve the fuel economy from the 2017 Mustang GT with the previous version of the MT82. This, however, might have something to do with the V8's biggest improvements: dual-fuel injection system and Shelby GT350-inspired plasma-sprayed cylinder bore liners.

The 2018 Mustang EcoBoost, meanwhile gets a different diaphragm
spring and cover, thus raising torque capacity and improving the feel
of the clutch pedal. Then again, the 10-speed automatic co-
developed with General Motors is the real party piece of the 2018
Mustang, be it the Coyote or EcoBoost[10].

b. An article published on mustangandfords.com reported:

If you're driving a 2011-2014 Mustang with the 3.7L DOHC V-6 or
5.0L DOHC Coyote V-8, you're undoubtedly frustrated with sloppy
shifts, gear clash, disappointing acceleration, and durability issues.
And despite the Mustang's exceptional build quality, the factory's
Getrag MT-82 six-speed just isn't up to the job in high-performance
applications. The MT-82 suffers from an unacceptable failure rate
and can't be described as a user friendly gearbox. It tends to get
stuck in gear during hard aggressive shifting. It also tends to break.
It has a subpar externally mounted rail-style shifter. We've even
seen bolts fall out of the factory shifter. Because the factory Getrag
MT-82 six-speed has never been up to the task it was designed for,
Modern Driveline engineers have been working on a Tremec T-56
Magnum XL six-speed conversion package fully capable and ready
for action in your 2011-2014 3.7L or 5.0L Mustang[11].

## **Technical Service Bulletins**

60.    Over the nine-year period beginning around September of 2010 and
up to as recently as August of 2018, Ford issued a variety of PIs, TSBs, and other
bulletins related to the MT82and Transmission Defect.

61.    Whether through customer complaints, dealer complaints, or its own
testing, Ford's recognition of the Transmission Defect can be pinpointed to
September 20, 2010, if not ealier.

62.    **Bulletin # 10-19-4** In September 2010, Ford issued Service Bulletin
#10-19-4 entitled "CLUTCH STAYOUT AT HIGH RPM." This bulletin
applied to 2011 Mustang built with a manual transmission. In this bulletin, Ford

---

[10] https://www.autoevolution.com/news/2018-ford-mustang-gt-features-upgraded-mt82-manual-transmission-121592.html, last accessed April 30, 2019

[11] http://www.mustangandfords.com/how-to/drivetrain/1504-scrap-your-getrag-for-the-modern-drivelinetremec-t-56-magnum-xl/, last accessed on April 30, 2019

CLASS ACTION COMPLAINT

advised service personnel, "Some 2011 Mustangs…, may exhibit a clutch pedal Stayout condition will generate a concern of the clutch pedal remaining on the floor during high engine RPM shifts. When engine RPM drops, clutch pedal operation returns to normal, but the re-engagement may be abrupt."

63. **TSB 11-3-18** In March 2011, Ford issued Service Bulletin #11-3-18 entitled "MT82 MANUAL 6-SPEED TRANSMISSION COLD SHIFT EFFORT." This bulletin applied to 2011-2012 Mustang vehicles equipped with a MT82 6-speed manual transmission. In this bulletin, Ford advised service personnel, "Some 2011-2012 Mustang vehicles equipped with a MT82 6-speed manual transmission may exhibit increased shift efforts in cold ambient temperatures. This is usually most noticeable in 1st and 2nd gears but may also be noticed in 3rd through 6th gears.

64. **SSM 26614** Issued on October 19, 2010, this Special Service Message identified an issue with fasteners in the MT82 and advised technicians of revised fasteners.

65. **TSB 18-2083** Published on March 20, 2018. This TSB entitled "5.0L Manual Transmission – Inability or Difficulty to shift into Second Gear – Built on or before 15-Nov-2017" was issued for 2018 Mustang vehicles equipped with the 5.0L engine and a manual transmission. The TSB addresses difficulty shifting into second gear that, according to Ford, may have been due to a stack-up tolerance issue between the transmission and the shifter.

66. **TSB 18-2175** Published on June 29, 2018. This TSB entitled "5.0L Manual Transmission – Inability to shift into 3rd or 4th Gear" was issued for 2018 Mustang vehicles equipped with the 5.0L engine and a manual transmission. The TSB addresses difficulty shifting into 3rd and 4th gear that, according to Ford, may have been due to a broken 3-4 shift fork.

67. **TSB 18-2267** On August 30, 2018, Ford issued Service Bulletin #18-2267 entitled "5.0L- Manual Transmission- Inability To Drive In First and

1  Second Gear." This bulletin applied to 2018-2019 Mustang vehicles equipped
2  with a 5.0L engine and a manual transmission. In this bulletin, Ford advised
3  service personnel, "Some 2018-2019 Mustang vehicles equipped with a 5.0L
4  engine and a manual transmission may exhibit an inability to drive the vehicle in
5  first and/or second gear." In this bulletin, Ford provided an explanation of the 6-
6  speed transmission's inability to drive, and advised service personnel that, "this
7  may be due to a broken 1-2 shift fork."

8               **Ford Has Actively Concealed the Transmission Defect**

9         68.    While Ford has been fully aware of the Transmission Defect in the
10  Class Vehicles, it actively concealed the existence and nature of the defect from
11  Plaintiff and Class Members at the time of purchase, lease, or repair and
12  thereafter.  Specifically, Ford failed to disclose or actively concealed at and after
13  the time of purchase, lease, or repair:

14              (a)    any and all known material defects or material nonconformity
15                     of the Class Vehicles, including the defects relating to the
16                     Transmission;
17              (b)    that the Class Vehicles, including their Transmissions, were
18                     not in good in working order, were defective, and were not fit
19                     for their intended purposes; and
20              (c)    that the Class Vehicles and their Transmissions were
21                     defective, despite the fact that Ford learned of such defects
22                     through alarming failure rates, customer complaints, as well
23                     as other internal sources, as early as 2010.

24        69.    Ford further actively concealed the material facts that the
25  Transmission was not safe, that it would function in a manner that would pose a
26  safety hazard, and that it was defective.  Instead, Ford sold vehicles with a
27  known safety defect, and failed to disclose this defect to consumers when Ford
28  learned of it.

**CLASS ACTION ALLEGATIONS**

70.    Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated as members of the proposed Plaintiff Classes pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

71.    The Class and Sub-Classes are defined as:

**Nationwide Class**:  All individuals in the United States who purchased or leased any 2011 through 2019 Ford Mustang equipped with an MT82 or MT82-D4 manual Transmission.

**California Sub-Class**: All residents of the State of California who purchased or leased any 2011 through 2019 Ford Mustang vehicles equipped with an MT82 or MT82-D4 manual Transmission.

**CLRA Sub-Class**:  All members of the California Sub-Class who are "consumers" within the meaning of California Civil Code § 1761(d).

**Implied Warranty Sub-Class**: All members of the Nationwide Class who took delivery of their vehicles in the State of California.

72.    Excluded from the Class and Sub-Classes are:  (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) all Judges to whom this case is assigned and the Judges' staff; (3) any Judge sitting in the presiding court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiff reserves the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

73.    There is a well-defined community of interest in the litigation and each Sub-Class is readily ascertainable.

74.    <u>Numerosity</u>:  Although the exact number of Class Members is

1    uncertain and can only be ascertained through appropriate discovery, the number
2    is great enough such that joinder is impracticable.  The disposition of the claims
3    of these Class Members in a single action will provide substantial benefits to all
4    parties and to the Court.  The Class Members are readily identifiable from
5    information and records in Defendant's possession, custody, or control, as well
6    as from records kept by the Department of Motor Vehicles.

7        75.    Typicality:  Plaintiff's claims are typical of the claims of the Class
8    in that Plaintiff, like all Class Members, purchased or leased a Class Vehicle
9    designed, manufactured, and distributed by Ford, and equipped with a
10   Transmission.  The representative Plaintiff, like all Class Members, have been
11   damaged by Defendant's misconduct in that they have incurred or will incur the
12   cost of repairing or replacing the defective transmission.  Furthermore, the
13   factual bases of Ford's misconduct are common to all Class Members and
14   represent a common thread resulting in injury to all Class Members.

15       76.    Commonality:  There are numerous questions of law and fact
16   common to Plaintiff and the Class that predominate over any question affecting
17   only individual Class Members.  These common legal and factual issues include
18   the following:

19           (a)    Whether Class Vehicles contain defects relating to the
20                  Transmission;
21           (b)    Whether the defects relating to the Transmission constitute an
22                  unreasonable safety risk;
23           (c)    Whether Defendant knew about the defects relating to the
24                  Transmission and, if so, how long Defendant has known of
25                  the defect;
26           (d)    Whether the defective nature of the Transmission constitutes a
27                  material fact;
28           (e)    Whether Defendant has a duty to disclose the defective nature

of the Transmission to Plaintiff and Class Members;

    (f)   Whether Plaintiff and the other Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

    (g)   Whether Defendant knew or reasonably should have known of the defects relating to the Transmission before it sold and leased Class Vehicles to Plaintiff and Class Members;

    (h)   Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective Transmission;

    (i)   Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective Transmission; and

    (j)   Whether Defendant breached the implied warranty of merchantability pursuant to the Song-Beverly Consumer Warranty Act.

77.   Adequate Representation:  Plaintiff will fairly and adequately protect the interests of the Class Members.  Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intend to prosecute this action vigorously.

78.   Predominance and Superiority:  Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class

Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

79.    In the alternative, this action is certifiable under the provisions of Federal Rule of Civil Procedure 23(b)(1) and/or (b)(2) because:

(a)    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Ford;

(b)    The prosecution of separate actions by individual members of the Class would create a risk of adjudications as to them which would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c)    Ford has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to members of the Class on a mandatory, class-wide basis.

80.    Plaintiff is not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a

1  class action.

2  ## TOLLING OF THE STATUTES OF LIMITATIONS

3  81.    Because the defect is undetectable until it manifests and Ford failed

4  to disclose or intentionally concealed the Transmission Defect, Plaintiff and

5  Class Members were not reasonably able to discover the problem until after

6  purchasing the Class Vehicles, despite exercise of due diligence.

7  82.    Additionally, on information and belief, Ford instructed its

8  authorized dealership employees and technicians to inform Class Members that

9  the manifestations of the Transmission Defect in the Transmission was normal,

10  and therefore not a defect as alleged herein.

11  83.    Plaintiff and the Class Members had no realistic ability to discern

12  that the Transmissions in Class Vehicles were defective.  Therefore, the

13  discovery rule is applicable to the claims asserted by Plaintiff and the Class

14  Members.

15  84.    Plaintiff is informed and believes and based thereon alleges that

16  Ford has known of the Transmission Defect since at least 2010 and has

17  concealed from or failed to alert owners of the Class Vehicles of the defective

18  nature of the Transmissions.

19  85.    Any applicable statute of limitations has therefore been tolled by

20  Defendant's knowledge, active concealment, and denial of the facts alleged

21  herein.  Defendant is further estopped from relying on any statute of limitations

22  because of its concealment of the Transmission Defect.

23  ## FIRST CAUSE OF ACTION

24  ### Violation of California's Consumer Legal Remedies Act –

25  ### Cal. Civ. Code § 1750, *et seq*.

26  ### (On Behalf of the CLRA Sub-Class)

27  86.    Plaintiff incorporates by reference the allegations contained in the

28  preceding paragraphs of this Complaint.

87.    Plaintiff brings this cause of action on behalf of himself and on behalf of the members of the CLRA Sub-Class.

88.    Defendant is a "person" as defined by California Civil Code § 1761(c).

89.    Plaintiff and CLRA Sub-Class Members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased their Class Vehicles primarily for personal, family or household use.

90.    By failing to disclose and concealing the defective nature of the transmissions from Plaintiff and prospective Class Members, Defendant violated California Civil Code § 1770(a), as it represented that the Class Vehicles and their transmissions had characteristics and benefits that they do not have, and represented that the Class Vehicles and their transmissions were of a particular standard, quality, or grade when they were of another.  *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

91.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

92.    Defendant knew that the Class Vehicles and their transmissions suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

93.    As a result of their reliance on Defendant's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, Plaintiff and the Class Members were harmed and suffered actual damages in that the Class Vehicles' transmissions are substantially certain to fail before their expected useful life has run.

CLASS ACTION COMPLAINT

94.     Defendant was under a duty to Plaintiff and the Class Members to disclose the defective nature of the transmissions and/or the associated repair costs because:

      (a)   Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' transmissions;

      (b)   Plaintiff and the Class Members could not reasonably have been expected to learn or discover that their transmissions had a dangerous safety defect until it manifested; and

      (c)   Defendant knew that Plaintiff and the Class Members could not reasonably have been expected to learn of or discover the safety defect.

95.     In failing to disclose the defective nature of the transmissions, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

96.     The facts Defendant concealed from or did not disclose to Plaintiff and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less.  Had Plaintiff and other Class Members known that the Class Vehicles' transmissions were defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

97.     Plaintiff and the Class Members are reasonable consumers who do not expect the transmissions installed in their vehicles to exhibit transmission slips, kicking forward, jerking, premature internal wear, delayed acceleration, and/or difficulty in stopping the vehicle.  This is the reasonable and objective consumer expectation relating to vehicle transmissions.

98.     As a result of Defendant's conduct, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles experienced

and will continue to experience transmission slips, kicking forward, jerking, increased stopping times, premature internal wear, delayed acceleration, and, eventually, transmission failure.

99.    As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiff and Class Members suffered and will continue to suffer actual damages.

100.    Plaintiff and the Class are entitled to equitable relief.

101.    Plaintiff provided Defendant with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a).  If, within 30 days, Defendant fails to provide appropriate relief for their violations of the CLRA, Plaintiff will amend this Complaint to seek monetary, compensatory, and punitive damages, in addition to the injunctive and equitable relief that he seeks now on behalf of himself and the CLRA Sub-Class.

## SECOND CAUSE OF ACTION

**Violation of California Business & Professions Code § 17200, *et seq.***

**(On Behalf of the California Sub-Class)**

102.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

103.    Plaintiff brings this cause of action on behalf of himself and on behalf of the California Sub-Class.

104.    As a result of their reliance on Defendant's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, Plaintiff and the Class Members were harmed and suffered actual damages in that the Class Vehicles' transmissions are substantially certain to fail before their expected useful life has run.

105.    California Business & Professions Code § 17200 prohibits acts of

1  "unfair competition," including any "unlawful, unfair or fraudulent business act

2  or practice" and "unfair, deceptive, untrue or misleading advertising."

3     106.  Plaintiff and the Class Members are reasonable consumers who do

4  not expect their transmissions to exhibit transmission slips, kicking forward,

5  jerking, increased stopping times, premature internal wear, delayed acceleration,

6  and, eventually, transmission failure.

7     107.  Defendant knew the Class Vehicles and their transmissions suffered

8  from inherent defects, were defectively designed or manufactured, would fail

9  prematurely, and were not suitable for their intended use.

10     108.  In failing to disclose the defects with the transmission, Defendant

11  has knowingly and intentionally concealed material facts and breached its duty

12  not to do so.

13     109.  Defendant was under a duty to Plaintiff and the Class Members to

14  disclose the defective nature of the Class Vehicles and their transmissions:

15        (a)  Defendant was in a superior position to know the true state of

16             facts about the safety defect in the Class Vehicles'

17             transmissions;

18        (b)  Defendant made partial disclosures about the quality of the

19             Class Vehicles without revealing the defective nature of the

20             Class Vehicles and their transmissions; and

21        (c)  Defendant actively concealed the defective nature of the Class

22             Vehicles and their transmissions from Plaintiff and the Class.

23     110.  The facts Defendant concealed from or not disclosed to Plaintiff and

24  the Class Members are material in that a reasonable person would have

25  considered them to be important in deciding whether to purchase or lease Class

26  Vehicles.  Had Plaintiff and other Class Members known that the Class Vehicles'

27  transmissions were defective and posed a safety hazard, then Plaintiff and the

28  other Class Members would not have purchased or leased Class Vehicles

CLASS ACTION COMPLAINT

1  equipped with transmissions, or would have paid less for them.

2      111.  Defendant continued to conceal the defective nature of the Class

3  Vehicles and their transmissions even after Class Members began to report

4  problems.  Indeed, Defendant continues to cover up and conceal the true nature

5  of the problem.

6      112.  Defendant's conduct was and is likely to deceive consumers.

7      113.  Defendant's acts, conduct and practices were unlawful, in that they

8  constituted:

9          (a)    Violations of the California Consumer Legal Remedies Act;

10         (b)    Violations of the Song-Beverly Consumer Warranty Act; and

11         (c)    Violations of the express warranty provisions of California

12                Commercial Code section 2313.

13     114.  By its conduct, Defendant has engaged in unfair competition and

14 unlawful, unfair, and fraudulent business practices.

15     115.  Defendant's unfair or deceptive acts or practices occurred

16 repeatedly in Defendant's trade or business and were capable of deceiving a

17 substantial portion of the purchasing public.

18     116.  As a direct and proximate result of Defendant's unfair and deceptive

19 practices, Plaintiff and the Class have suffered and will continue to suffer actual

20 damages.

21     117.  Defendant has been unjustly enriched and should be required to

22 make restitution to Plaintiff and the Class pursuant to §§ 17203 and 17204 of the

23 Business & Professions Code.

24                    **THIRD CAUSE OF ACTION**

25          **Breach of Implied Warranty Pursuant to Song-Beverly**

26   **Consumer Warranty Act – Cal. Civ. Code §§ 1792 and 1791.1, *et seq.***

27        (**On Behalf of the California Implied Warranty Sub-Class**)

28     118.  Plaintiff incorporates by reference the allegations contained in the

1  preceding paragraphs of this Complaint.

2      119.   Plaintiff brings this cause of action against Defendant on behalf of

3  himself and on behalf of the members of the Implied Warranty Sub-Class.

4      120.   Defendant was at all relevant times the manufacturer, distributor,

5  warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to

6  know of the specific use for which the Class Vehicles were purchased or leased.

7      121.   Defendant provided Plaintiff and Class Members with an implied

8  warranty that the Class Vehicles and their components and parts are

9  merchantable and fit for the ordinary purposes for which they were sold.

10 However, the Class Vehicles are not fit for their ordinary purpose of providing

11 reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles

12 and their transmissions suffered from an inherent defect at the time of sale and

13 thereafter are not fit for their particular purpose of providing safe and reliable

14 transportation.

15     122.   Defendant impliedly warranted that the Class Vehicles were of

16 merchantable quality and fit for such use.  This implied warranty included,

17 among other things:  (i) a warranty that the Class Vehicles and their

18 transmissions were manufactured, supplied, distributed, and/or sold by Ford

19 were safe and reliable for providing transportation; and (ii) a warranty that the

20 Class Vehicles and their transmissions would be fit for their intended use while

21 the Class Vehicles were being operated.

22     123.   Contrary to the applicable implied warranties, the Class Vehicles

23 and their transmissions at the time of sale and thereafter were not fit for their

24 ordinary and intended purpose of providing Plaintiff and the Class Members with

25 reliable, durable, and safe transportation.  Instead, the Class Vehicles are

26 defective, including, but not limited to, the defective design and manufacture of

27 their transmissions.

28     124.   As a result of Defendant's breach of the applicable implied

1  warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable

2  loss of money, property, and/or value of their Class Vehicles. Additionally, as a

3  result of the Transmission Defect, Plaintiff and the Class Members were harmed

4  and suffered actual damages in that the Class Vehicles' transmissions are

5  substantially certain to fail before their expected useful life has run.

6      125.  Defendant's actions, as complained of herein, breached the implied

7  warranty that the Class Vehicles were of merchantable quality and fit for such

8  use in violation of California Civil Code §§ 1792 and 1791.1.

9  **FOURTH CAUSE OF ACTION**

10  **Breach of Express Warranty – Cal. Comm. Code § 2313**

11  **(On Behalf of the California Sub-Class)**

12      126.  Plaintiff incorporate by reference the allegations contained in the

13  preceding paragraphs of this Complaint.

14      127.  Plaintiff brings this cause of action on behalf of himself and on

15  behalf of the California Sub-Class.

16      128.   As a result of Defendant's breach of the applicable express

17  warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable

18  loss of money, property, and/or value of their Class Vehicles. Additionally, as a

19  result of the Transmission Defect, Plaintiff and the Class Members were harmed

20  and suffered actual damages in that the Class Vehicles' transmissions are

21  substantially certain to fail before their expected useful life has run.

22      129.  Defendant provided all purchasers and lessees of the Class Vehicles

23  with the express warranty described herein, which became a material part of the

24  bargain.  Accordingly, Defendant's express warranty is an express warranty

25  under California law.

26      130.  Defendant manufactured and/or installed the transmission and its

27  component parts in the Class Vehicles and the Transmission and its component

28  parts are covered by the express warranty.

131.  Ford provided all purchasers and lessees of the Class Vehicles with a New Vehicle "Bumper to Bumper" Limited Warranty and a Powertrain Limited Warranty with the purchase or lease of the Class Vehicles.  In this Bumper to Bumper Limited Warranty, Ford expressly warranted that its dealers would "without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship" if the vehicle is properly operated and maintained and was taken to a Ford dealership for a warranty repair during the warranty period.  Under this "Bumper to Bumper Coverage," Ford promised to cover "all parts on [the] vehicle" "for three years – unless you drive more than 36,000 miles before three years elapse. In that case, your coverage ends at 36,000 miles."

132.  Furthermore, under the Powertrain Limited Warranty, Ford expressly warranted that it would cover listed powertrain components under its Powertrain Limited Warranty, including transmission components including the "Transmission: all internal parts, clutch cover, seals and gaskets, torque converter, transfer case (including all internal parts), transmission case, transmission mounts" "for five years or 60,000 miles, whichever occurs first."

133.  On information and belief, Defendant breached the express warranty by:

        a.    Extending a 3 year/36,000 mile Bumper to Bumper Limited Warranty and 5 year/60,000 mile Powertrain Limited Warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship, including the subject transmission, at no cost to the owner or lessee;

        b.    Selling and leasing Class Vehicles with transmissions that were defective in material and workmanship, requiring repair

000004/01217523_1

or replacement within the warranty period;

c.    Refusing to honor the express warranty by repairing or replacing, free of charge, the transmission or any of its component parts and instead charging for repair and replacement parts; and

d.    Purporting to repair the transmission and its component parts by replacing the defective transmission components with the same defective components and/or instituting temporary fixes, on information and belief, to ensure that the Transmission Defect manifests outside of the Class Vehicles' express warranty period.

134.   Plaintiff was not required to notify Ford of the breach because affording Ford a reasonable opportunity to cure its breach of written warranty would have been futile.  Defendant was also on notice of the defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of the transmission or a component thereof, and through other internal sources.

135.   As a direct and proximate cause of Defendant's breach, Plaintiff and the other Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease.  Additionally, Plaintiff and the other Class Members either have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

136.   Additionally, Ford breached the express warranty by performing illusory repairs.  Rather than repairing the vehicles pursuant to the express warranty, Ford falsely informed class members that there was no problem with their vehicle, or replaced defective components in the Transmissions with equally defective components, without actually repairing the vehicles.

137.   Plaintiff and the other Class Members are entitled to legal and

equitable relief against Defendant, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

## FIFTH CAUSE OF ACTION

### Breach of Warranty under the Magnuson-Moss Warranty Act – 15 U.S.C. § 2303 *et seq*.

### (On Behalf of the Nationwide Class, or, in the Alternative, the State Sub-Classes)

138.   Plaintiff incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

139.   Plaintiff bring this cause of action on behalf of himself and on behalf of all Class Members, or, in the alternative, the California Sub-Class.

140.   The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

141.   Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

142.   Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

143.   Defendant's express warranty is a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

144.   Ford provided all purchasers and lessees of the Class Vehicles with a New Vehicle "Bumper to Bumper" Limited Warranty and a Powertrain Limited Warranty with the purchase or lease of the Class Vehicles.  In this Bumper to Bumper Limited Warranty, Ford expressly warranted that its dealers would "without charge, **repair, replace, or adjust all parts on your vehicle that malfunction or fail** during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship" if the vehicle is properly operated and maintained and was taken

1    to a Ford dealership for a warranty repair during the warranty period. Under this

2    "Bumper to Bumper Coverage," Ford promised to cover "all parts on [the]

3    vehicle" "for three years – unless you drive more than 36,000 miles before three

4    years elapse. In that case, your coverage ends at 36,000 miles."

5        145.   Furthermore, under the Powertrain Limited Warranty, Ford

6    expressly warranted that it would cover listed powertrain components under its

7    Powertrain Limited Warranty, including transmission components (including the

8    "Transmission: all internal parts, clutch cover, seals and gaskets, torque

9    converter, transfer case (including all internal parts), transmission case,

10   transmission mounts") "for five years or 60,000 miles, whichever occurs first."

11       146.   On information and belief, Defendant breached the express warranty

12   by:

13            (a)    Extending a 3 year/36,000 mile Bumper to Bumper Limited

14                   Warranty and 5 year/60,000 mile Powertrain Limited

15                   Warranty with the purchase or lease of the Class Vehicles,

16                   thereby warranting to repair or replace any part defective in

17                   material or workmanship, including the subject transmission,

18                   at no cost to the owner or lessee;

19            (b)    Selling and leasing Class Vehicles with transmissions that

20                   were defective in material and workmanship, requiring repair

21                   or replacement within the warranty period;

22            (c)    Refusing to honor the express warranty by repairing or

23                   replacing, free of charge, the transmission or any of its

24                   component parts and instead charging for repair and

25                   replacement parts; and

26            (d)    Purporting to repair the transmission and its component parts

27                   by replacing the defective transmission components with the

28                   same defective components and/or instituting temporary fixes,

000004/01217523_1

on information and belief, to ensure that the Transmission

Defect manifests outside of the Class Vehicles' express

warranty period.

147. Furthermore, Defendant impliedly warranted that the Class Vehicles
were of merchantable quality and fit for such use. This implied warranty
included, among other things: (i) a warranty that the Class Vehicles and their
transmissions were manufactured, supplied, distributed, and/or sold by Ford
were safe and reliable for providing transportation; and (ii) a warranty that the
Class Vehicles and their transmissions would be fit for their intended use while
the Class Vehicles were being operated.

148. Contrary to the applicable implied warranties, the Class Vehicles
and their transmissions at the time of sale and thereafter were not fit for their
ordinary and intended purpose of providing Plaintiff and Class Members with
reliable, durable, and safe transportation. Instead, the Class Vehicles are
defective, including, but not limited to, the defective design of their
transmissions.

149. Defendant's breach of express and implied warranties has deprived
Plaintiff and Class Members of the benefit of their bargain.

150. The amount in controversy of Plaintiff's individual claims meets or
exceeds the sum or value of $25,000. In addition, the amount in controversy
meets or exceeds the sum or value of $50,000 (exclusive of interests and costs)
computed on the basis of all claims to be determined in this suit.

151. Defendant has been afforded a reasonable opportunity to cure its
breach, including when Plaintiff and Class Members brought their vehicles in for
diagnoses and repair of the transmission.

152. As a direct and proximate cause of Defendant's breach of express
and implied warranties, Plaintiff and Class Members sustained damages and
other losses in an amount to be determined at trial. Defendant's conduct

CLASS ACTION COMPLAINT

1  damaged Plaintiff and Class Members, who are entitled to recover actual

2  damages, consequential damages, specific performance, diminution in value,

3  costs, attorneys' fees, and/or other relief as appropriate.

4    153.  Additionally, Ford breached the express warranty by performing

5  illusory repairs.  Rather than repairing the vehicles pursuant to the express

6  warranty, Ford falsely informed class members that there was no problem with

7  their vehicles, performed ineffective software updates, or replaced defective

8  components in the Transmissions with equally defective components, without

9  actually repairing the vehicles.

10    154.  As a result of Defendant's violations of the Magnuson-Moss

11  Warranty Act as alleged herein, Plaintiff and Class Members have incurred

12  damages.

### SIXTH CAUSE OF ACTION

### Unjust Enrichment

### (On Behalf of the Class)

16    155.  Plaintiff incorporates by reference the allegations contained in the

17  preceding paragraphs of this Complaint.

18    156.  Plaintiff brings this cause of action on behalf of himself and the

19  Class.

20    157.  As a direct and proximate result of Defendant's failure to disclose

21  known defects, Defendant has profited through the sale and lease of the Class

22  Vehicles.  Although these vehicles are purchased through Defendant's agents,

23  the money from the vehicle sales flows directly back to Defendant.

24    158.  Additionally, as a direct and proximate result of Defendant's failure

25  to disclose known defects in the Class Vehicles, Plaintiff and Class Members

26  have vehicles that require repeated, high-cost repairs that can and therefore have

27  conferred an unjust substantial benefit upon Defendant.

28    159.  Defendant has been unjustly enriched due to the known defects in

1    the Class Vehicles through the use money paid that earned interest or otherwise
2    added to Defendant's profits when said money should have remained with
3    Plaintiff and Class Members.

4        160.  As a result of the Defendant's unjust enrichment, Plaintiff and Class
5    Members have suffered damages.

6    **RELIEF REQUESTED**

7        161.  Plaintiff, on behalf of himself, and all others similarly situated,
8    requests the Court to enter judgment against Defendant, as follows:

9            (a)  An order certifying the proposed Class and Sub-Classes,
10               designating Plaintiff as named representatives of the Class,
11               and designating the undersigned as Class Counsel;

12           (b)  A declaration that Defendant is financially responsible for
13               notifying all Class Members about the defective nature of the
14               transmission, including the need for period maintenance;

15           (c)  An order enjoining Defendant from further deceptive
16               distribution, sales, and lease practices with respect to Class
17               Vehicles, and to remove and replace Plaintiff and Class
18               Members' transmissions with a suitable alternative product;
19               enjoining Defendant from selling the Class Vehicles with the
20               misleading information; compelling Defendant to provide
21               Class members with a replacement transmission that does not
22               contain the defects alleged herein; and/or compelling
23               Defendant to reform its warranty, in a manner deemed to be
24               appropriate by the Court, to cover the injury alleged and to
25               notify all Class members that such warranty has been
26               reformed;

27           (d)  A declaration requiring Defendant to comply with the various
28               provisions of the state and federal consumer protection

000004/01217523_1

1    statutes herein alleged and to make all the required

2    disclosures;

3    (e)    An award to Plaintiff and the Class for compensatory,

4    exemplary, and statutory damages, including interest, and

5    including the additional purchase cost of the Transmission

6    option, in an amount to be proven at trial; except that Plaintiff

7    does not currently seek monetary damages under the

8    Consumers Legal Remedies Act;

9    (f)    Any and all remedies provided pursuant to the state and

10    federal consumer protection statutes herein alleged;

11    (g)    A declaration that Defendant must disgorge, for the benefit of

12    the Class, all or part of the ill-gotten profits it received from

13    the sale or lease of its Class Vehicles, or make full restitution

14    to Plaintiff and Class Members;

15    (h)    An award of attorneys' fees and costs, as allowed by law;

16    (i)    An award of attorneys' fees and costs pursuant to California

17    Code of Civil Procedure § 1021.5;

18    (j)    An award of pre-judgment and post-judgment interest, as

19    provided by law;

20    (k)    Leave to amend the Complaint to conform to the evidence

21    produced at trial;

22    (l)    Plaintiff demand that Ford perform a recall, and repair all

23    vehicles; and

24    (m)    Such other relief as may be appropriate under the

25    circumstances.

26    //

27    //

28    //

Page 47

CLASS ACTION COMPLAINT

1

## DEMAND FOR JURY TRIAL

2      162.   Plaintiff demands a trial by jury of any and all issues in this action

3  so triable.

4

5  Dated:  November 14, 2019                    Respectfully submitted,

6                                               CAPSTONE LAW APC

7

8                                       By: /s/Steven R. Weinmann

9                                          Steven R. Weinmann
                                           Tarek H. Zohdy
10                                         Cody R. Padgett
                                           Trisha K. Monesi
11                                         CAPSTONE LAW APC
                                           1875 Century Park East, Suite 1000
12                                          Los Angeles, California 90067
                                           Telephone:(310) 556-4811
13                                         Facsimile: (310) 943-0396

14                                         Steven G. Calamusa (*PHV app.
                                           forthcoming*)
15                                         GORDON & PARTNERS PA
                                           4114 Northlake Blvd.
16                                         Palm Beach Gardens, FL 33410
                                           Tel.:(561) 799-5070
17                                         Fax:(561) 799-4050
                                           Email:
18                                         SCalamusa@ForTheInjured.com

19                                         Joshua Levine (*PHV app. forthcoming*)
                                           Jeff Ostrow (*PHV app. forthcoming*)
20                                         KOPELOWITZ OSTROW FERGUSON
                                           WEISELBERG GILBERT
21                                         One West Las Olas Blvd., Suite 500
                                           Fort Lauderdale, Florida 33301
22                                         Tel.:(954) 525-4100
                                           Fax:(954) 525-4300
23                                         Email:      levine@kolawyers.com
                                           ostrow@kolawyers.com

24

25

26

27

28

# EXHIBIT 1

DocuSign Envelope ID: 2998EF536-5649-403C-9045-6E3ACAED30C44

1  Steven R. Weinmann (SBN 190956)
   Steven.Weinmann@capstonelawyers.com
2  Tarek H. Zohdy (SBN 247775)
   Tarek.Zohdy@capstonelawyers.com
3  Cody R. Padgett (SBN 275553)
   Cody.Padgett@capstonelawyers.com
4  Trisha K. Monesi (SBN 303512)
   Trisha.Monesi@capstonelawyers.com
5  Capstone Law APC
   1875 Century Park East, Suite 1000
6  Los Angeles, California 90067
   Telephone: (310) 556-4811
7  Facsimile: (310) 943-0396

8  Attorneys for Plaintiff Ziad El-Rifai

9               UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11

12 ZIAD EL-RIFAI individually, and on        Case No.:
   behalf of a class of similarly situated
13 individual,                               **DECLARATION OF ZIAD EL-
                                             RIFAI IN SUPPORT OF VENUE
14            Plaintiff,                      FOR CLASS ACTION COMPLAINT
                                             PURSUANT TO CIVIL CODE
15       v.                                   SECTION 1780(d)**

16 FORD MOTOR COMPANY, a
   Delaware corporation,
17
              Defendant.
18

19

20

21

22

23

24

25

26

27

28

DECL. OF ZIAD EL-RIFAI IN SUPPORT OF PLAINTIFF'S SELECTION OF VENUE FOR TRIAL

# DECLARATION OF ZIAD EL-RIFAI

I, Ziad El-Rifai, declare under penalty of perjury as follows:

1.     I make this declaration based upon my personal knowledge except as to those matters stated herein that are based upon information and belief, and as to those matters I believe them to be true. I am over the age of eighteen, a citizen of the State of California, and a Plaintiff in this action.

2.     Pursuant to California Civil Code section 1780(d), this Declaration is submitted in support of Plaintiff's Selection of Venue for the Trial of Plaintiff's California Consumers Legal Remedies Act claim.

3.     I am a resident of Glendale, California, in Los Angeles County. I purchased and service my vehicle in Los Angeles County, and I keep my vehicle at my home in Glendale, California.

4.     Based on the facts set forth herein, the Central District of California is a proper venue for the prosecution of my California Consumers Legal Remedies Act claim because the vehicle that is the subject of this lawsuit is situated here and a substantial portion of the events giving rise to my claims occurred here. Further, Defendant conducts business in the Central District of California.

5.     I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct.

Executed on November 14/2019, 2019 in _____Glendale_____, California.

Ziad El-Rifai

DECL. OF ZIAD EL-RIFAI IN SUPPORT OF PLAINTIFF'S SELECTION OF VENUE FOR TRIAL